UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  8/3/11

WILFREDO MORALES,                                :

                      Plaintiff,          :

     -against-                                       :

UNITED STATES OF AMERICA,               :

                Defendant.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

09 Civ. 6499 (WHP)

MEMORANDUM & ORDER

WILLIAM H. PAULEY III, District Judge:

            Petitioner Wilfredo Morales moves to vacate, set aside or modify his sentence

pursuant to 28 U.S.C. § 2255. For the following reasons, Morales's petition is denied.

BACKGROUND

            On April 2, 2002, arrest warrants were issued for Wilfredo Morales ("Morales")

and several other defendants, including his brother, William, based on their involvement in a

conspiracy to distribute heroin and cocaine. (Arrest Warrant issued as to Wilfredo Morales,

dated Apr. 2, 2002, ECF No. 2.) Morales eluded authorities for seventeen months, while

William was arrested shortly after the arrest warrant issued. (See Hr'g Tr. dated April 9, 2002.)

On April 9, 2002, the police sought Morales at his mother's home. (Unsworn Affidavit of

Wilfredo Morales ("Morales Aff.") ¶ 3.) Approximately ten days later, the police again sought

Morales, this time at the home of his then-girlfriend. (Morales Aff. ¶ 4.) An indictment was

issued on May 7, 2002 naming both Morales and William as defendants. (Indictment dated May

7, 2002, ECF No. 25.) When Morales was finally arrested seventeen months later, the police officer told him that "over that time period he had a number of times run into someone or someplace where [Morales] had just been." (Morales Aff. ¶ 10.) Morales claims that he was unaware of the arrest warrant and indictment during this period. (Morales Aff. ¶ 7.) Neither his trial counsel nor appellate counsel ever raised the issue of his rights under the Speedy Trial Act, 18 U.S.C. § 3161 et seq.

On February 2, 2004, Morales pled guilty to: (1) conspiring to distribute and possess with intent to distribute greater than 1 kg of heroin and 50 grams of cocaine base, which carries a mandatory minimum sentence of ten years' imprisonment; and (2) possession of a firearm during and in relation to a narcotics offense, which carries a mandatory minimum sentence of five years' imprisonment. (Plea Agreement dated October 19, 2005 ("Plea Agreement") 1-2.) On October 19, 2005, the parties entered into a Plea Agreement, pursuant to which Morales agreed not to "file a direct appeal, nor litigate under [28 U.S.C. § 2255] . . . any sentence within or below the Stipulated Guidelines Range" of 322 to 387 months. (Plea Agreement 6.) The Plea Agreement also stated that both mandatory minimum sentences applied and that they were to run consecutively. (See Plea Agreement 4.) Neither Morales's trial counsel nor appellate counsel raised any issue regarding the consecutive mandatory minimum sentences. Morales was sentenced to a term of 276 months. (Final Judgment dated July 12, 2006, ECF No. 174.)

Prior to accepting the plea, this Court conducted a hearing and inquired whether the plea was entered into voluntarily and knowingly. (Hr'g Tr. Oct. 21, 2005"Tr.".) Morales testified that he read the agreement and fully understood it, discussed it with his attorney, and

2

had signed the plea. (Tr. 12.).  Morales also stated that he understood that by signing the plea, he

was waiving his right to appeal or otherwise challenge his sentence.  (Tr. 13.)  In that regard, this

Court specifically questioned Morales:

> The Court: [D]o you understand, sir, that under the terms of your sentencing agreement that you also are giving up your right to appeal or otherwise challenge your sentence in this case if you're sentenced within or below the stipulated guidelines range . . . ?
>
> Morales: Yes.

(Tr. 13.)

18 U.S.C. § 924 mandates a five-year minimum sentence for Morales's firearms

offense "[e]xcept to the extent that a greater minimum sentence is otherwise provided by this

subsection or by any other provision of law."  18 U.S.C. § 924(c)(1)(A)(1).  On June 16, 2008,

the Second Circuit split with all other circuits that had considered the issue and interpreted this

language to mean that the five-year mandatory minimum is inapplicable where a defendant is

subject to a higher mandatory minimum for a different crime.  United States v. Whitley, 529 F.3d

150, 151 (2d Cir. 2008).  The Court of Appeals applied the same reasoning in United States v.

Williams, 558 F.3d 166 (2d Cir. 2009), and held that a defendant convicted of both a narcotics

offense subject to a ten-year mandatory minimum and a firearms offense subject to a five-year

mandatory minimum under § 924(c) was subject only to the ten-year mandatory minimum for

the narcotics offense.  On November 29, 2010, the Supreme Court overturned Williams.  United

States v. Williams, 131 S. Ct. 632 (2010) (granting certiorari and vacating judgment); see also

Abbott v. United States, 131 S. Ct. 18 (2010).

Morales asserts that his counsel provided ineffective assistance by: (1) failing to

raise the argument later adopted by the Second Circuit in Whitley and Williams, and (2) failing

3

to argue that the Government had violated Morales's speedy trial rights.

DISCUSSION

## I. Waiver of Right to Collaterally Attack Sentence

A defendant may waive his right to collaterally attack his sentence within an

agreed upon guideline range. United States v. Lee, 523 F.3d 104, 106 (2d Cir. 2008); Garcia-

Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001) (per curiam). Such waivers are

"unenforceable only in very limited situations, such as when the waiver was not made

knowingly, voluntarily, and competently . . . ." United States v. Arevalo, 628 F.3d 93, 98 (2d

Cir. 2010). Here, Morales represented to this Court that he signed the plea agreement, that he

fully understood the agreement at the time he signed it, and that he understood that by entering

into the plea agreement, he was waiving all rights to appeal or otherwise challenge his sentence.

His waiver was therefore knowing and voluntary.

A waiver is also unenforceable insofar as it relates to a challenge to the

"constitutionality of the process by which he waived [his collateral attack] rights," such as when

the waiver was obtained because of ineffective assistance of counsel. Hernandez, 242 F.3d 110,

113 (2d Cir. 2001). However, a waiver is only unenforceable in this context if "the claim that

the waiver was the result of ineffective assistance of counsel [is] meritorious." United States v.

Monzon, 359 F.3d 110, 118-19 (2d Cir. 2004). To establish ineffective assistance of counsel, a

petitioner must show that (1) his attorney's representation fell below an objective standard of

reasonableness, and (2) there is a reasonable probability that, but for the deficiency in

representation, the result of the proceeding would have been different—i.e., that he was

4

prejudiced by his counsel's deficient performance.  Strickland v. Washington, 466 U.S. 668

(1984).  In the context of a guilty plea, in order to establish prejudice, "the defendant must show

that there is a reasonable probability that, but for counsel's errors, he would not have pleaded

guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Morales argues that because he received ineffective assistance of counsel relating to § 924(c) and

the Speedy Trial Act, his waiver of rights is unenforceable.

    A.  18 U.S.C. § 924(c)

       Morales's § 924 waiver argument fails.  Both Whitley and Williams were decided

after Morales was sentenced, and their holdings were contrary to the holdings of all other courts

to have reached the issue.  See, e.g., United States v. Easter, 553 F.3d 519 (7th Cir. 2009);

United States v. Parker, 549 F.3d 5 (1st Cir. 2008); United States v. Collins, 205 F. App'x 196

(5th Cir. 2006); United States v. Baldwin, 412 F. App'x 713 (6th Cir. 2002); United States v.

Studifin, 240 F.3d 415 (4th Cir. 2001); United States v. Alaniz, 235 F.3d 386 (8th Cir. 2000).

Moreover, since Morales filed the present motion, Williams (and by implication, Whitley) has

been overruled.  Abbot, 131 S. Ct. at 23; Williams, 131 S. Ct. at 632.  Given that prior to Whitley

and Williams, the courts of appeals were unanimous in upholding consecutive sentences under §

924(c), Morales's counsel could not have been expected to anticipate the brief change in the law

effected by Whitley and Williams, nor was he required to do so.  See Mayor v. Henderson, 13

F.3d 528, 533 (2d Cir. 1994) ("Counsel is not required to forecast changes in the governing

law.").  Accordingly, his trial counsel's failure to raise this argument prior to plea negotiations

was not objectively unreasonable and does not void his waiver of his right to collaterally attack

his sentence.

5

B. Speedy Trial Act

Morales's Speedy Trial Act argument also lacks merit. Whether excessive delay violates the Speedy Trial Act depends on a balancing of four factors: (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant timely asserted his rights, and (4) whether the defendant has been prejudiced. United States v. Jones, 91 F.3d 5, 8 (2d. Cir. 1996) (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)).

"The first of these [factors] is actually a double enquiry. Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay. . . . If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." Doggett v. United States, 505 U.S. 647, 651-52 (1992). A delay of over a year between indictment and arrest is typically considered "presumptively prejudicial." United States v. Penn, 434 F. Supp. 2d 229, 231 (S.D.N.Y. 2006) (citing Doggett, 505 U.S. at 652 n.1). Here, the time between Morales's indictment and arrest was seventeen months, sufficient to constitute a "presumptively prejudicial" delay warranting a Barker inquiry. However, seventeen months is not dramatically longer than twelve months, and thus this factor does not weigh heavily against the Government. Cf. Barker, 407 U.S. at 533-34 (no Speedy Trial Act violation despite five years between arrest and trial); Doggett, 505 U.S. at 658 (Speedy Trial Act violation found where, inter alia, eight and a half years passed between indictment and arrest); Jones, 91 F.3d at 8 (no Speedy Trial Act violation despite 25 months between indictment and initial appearance); Powell, 1999 WL 32930, at *2 (no Speedy Trial Act violation despite 46

6

months between warrant and arraignment).

The second <u>Barker</u> question is "whether the reason for the delay is because the Government breached its duty under normal circumstances to make a diligent good faith effort to locate and apprehend a defendant . . . [and] to what extent the defendant contributed to the delay, making the ultimate issue for this court whether the Government or the defendant is more to blame." <u>Penn</u>, 434 F. Supp. 2d at 231 (quotations and alterations omitted); <u>see also</u> <u>United States v. Blanco</u>, 861 F.2d 773, 778 (2d Cir. 1988). Here, it is clear that the police made at least some effort to locate Morales, visiting the homes of both his mother and girlfriend. Moreover, Morales states that after he was arrested, the police told him that they had just missed him "a number of times," indicating that the police continued to inquire after him throughout the seventeen months in which he was a fugitive. Though the full extent of the police's efforts at capture—and Morales's concurrent efforts at evasion—cannot be determined by the record before this Court, these facts indicate that in any case, this factor will not weigh heavily against the Government.

The third factor weighs heavily against a defendant who "knew of his indictment years before he was arrested." <u>Doggett</u>, 505 U.S. at 653. Here, Morales admits that he knew the police were looking for him (though he claims he did not know why). (Morales Aff. ¶ 3.) However, he was charged in the very same indictment as his brother, who <u>was</u> arrested within a week of the indictment. (<u>See</u> Morales Aff. ¶¶ 2-3.) That fact strongly indicates that Morales knew of both the arrest warrant and the indictment. <u>See</u> <u>Penn</u>, 434 F. Supp. 2d at 232 (fact that "two of the defendant's brothers . . . were arrested, prosecuted, convicted, and sentenced on the same indictment that publicly named [the] defendant all while [defendant], by his own

7

admission, remained in the local area . . . strongly indicates that the defendant was aware of the charges against him in this district long before he was arrested"). This factor therefore weighs heavily against Morales.

Finally, "unreasonable delay between formal accusation and trial threatens to produce more than one sort of harm, including oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence." Doggett, 505 U.S. at 654 (citations and alterations omitted). Morales has not alleged any prejudice resulting from this delay, nor does this Court perceive any prejudice that might tip this factor in his favor. See Barker, 407 U.S. at 534 (prejudice "minimal" where "there is no claim that any of Barker's witnesses died or otherwise became unavailable owing to the delay . . . [and] the trial transcript indicates only two very minor lapses of memory"). This factor therefore weighs heavily against Morales.

On balance, the Barker factors weigh heavily against Morales. Accordingly, Morales's trial counsel's alleged failure to raise a Speedy Trial Act argument does not fall below an objective standard of reasonableness.


II. Remaining Claims

"[I]n the context of claimed waivers of appellate rights . . . , plea agreements are to be applied narrowly and construed strictly against the Government." Hernandez, 242 F.3d at 113-14. Here, Morales's waiver applies only to an appeal of his "sentence" and not to the merits of the underlying conviction. Thus, his claim relating to the application of § 924(c), which relates to his sentence, is waived (and in any case fails on the merits for the same reasons

8

discussed above).  Morales's ineffective assistance of counsel claims based on the Speedy Trial

Act, on the other hand, arguably do not relate to his sentence and thus are not waived.  However,

for the same reasons discussed above in relation to waiver, these claims—relating to both his

trial and appellate counsel—fail on the merits.

Morales also asserts two further arguments: (1) that his plea agreement was the

result of "prosecutorial misconduct of a constitutional dimension," and (2) that his trial counsel

was ineffective because he allowed his collateral attack rights to be waived.  However, Morales

provides no supporting facts to buttress his claim of prosecutorial misconduct, and accordingly

this claim does not provide a basis for habeas relief.  See Sanders v. United States, 373 U.S. 1,

19 (1963) (dismissal of § 2255 motion appropriate where it "stated only bald legal conclusions

with no supporting factual allegations").  As to the second argument, the mere presence of a

waiver of collateral attack rights does not indicate that Morales's counsel's performance fell

below an objective standard of reasonableness.  Moreover, in this Court's experience, such a

waiver provision is standard in plea agreements offered by the United States Attorney for the

Southern District of New York.  Such waivers are valid and enforceable and provide benefits to

both parties.  Garcia-Santos, 273 F.3d at 509 (Such waivers "serve[] the government's interest in

avoiding both the expense and uncertainty of further litigation, [while] [t]he defendant

characteristically receives important benefits [such as] exemption from prosecution for other

crimes, the government's stipulation to an acceptable Guidelines range, and the government's

agreement that it would not seek upward departures or adjustments beyond that range").

Accordingly, this argument lacks merit.

9

III. Hearing

Under § 2255, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). "To warrant a hearing on an ineffective assistance of counsel claim, the defendant need establish only that he has a 'plausible' claim of ineffective assistance of counsel . . . ." Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009). Here, even accepting as true the facts claimed in Morales's unsworn affidavit, Morales has not made out a plausible claim for relief. Accordingly, he is not entitled to a hearing.

10

CONCLUSION

For the foregoing reasons, petitioner Wilfredo Morales's petition to set aside or

modify his sentence pursuant to 28 U.S.C. § 2255 is denied.  Because Morales has not made a

substantial showing of the denial of a constitutional right, a certificate of appealability will not be

issued.  See 28 U.S.C. § 2253(c).  In addition, this Court certifies pursuant to 28 U.S.C. §

1915(a)(3) that any appeal from this order would not be taken in good faith.  See Coppedge v.

United States, 369 U.S. 438 (1962).

The Clerk of the Court is directed to dismiss all pending motions and mark this

case as closed.

Dated:  August 3, 2011
        New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

*Copies mailed to:*

Wilfredo Morales
51934-054
Low Security Correctional Institute Allenwood
P.O. Box 1000
White Deer, PA 17887
*Plaintiff Pro Se*

Laurie Ann Korenbaum
U.S. Attorney's Office, SDNY (86 Chambers St.)
86 Chambers Street
New York, NY 10007
*Counsel for Defendant*

11